# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK ZOKAITES,** ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | 2:15cv404 |
| ) | **Electronic Filing** |
| **GARTH LANSAW** and **DEBORAH** ) | |
| **LANSAW,** ) | |
| ) | |
| Appellees. ) | |

## OPINION

The central issue in this appeal is whether the bankruptcy court erred by awarding the appellees, Garth and Deborah Lansaw, actual damages of $2,600, compensatory damages of $7,500 and punitive damages of $40,000 as a result of violations of the automatic stay by the appellant, Frank Zokaites. The bankruptcy court determined that Zokaites' conduct was sufficiently egregious to merit this award. After careful consideration of the arguments presented and the authority bearing on the matters raised, the court concludes the damages appropriately were awarded. Accordingly, the bankruptcy court's judgment in favor of the Lansaws and against Zokaites in the amount of $50,100 will be affirmed.

**Procedural History**

Garth and Deborah Lansaw operated a day care facility, Forever Young Childcare ("daycare"), and leased the space for the daycare from Zokaites. On August 16, 2006, the Lansaws filed a bankruptcy petition. The Lansaws subsequently sought an injunction against Zokaites based on his repeated and ongoing violations of the automatic stay. They initiated an adversarial proceeding against Zokaites on August 28, 2006, in part to obtain an injunction

barring him from ongoing disruption of the daycare. The Honorable Judith Fitzgerald held a hearing on October 3-4, 2006 and follow-up argument on October 20, 2006 on the request for injunctive relief and other related matters. At the conclusion of that proceeding Judge Fitzgerald issued a Memorandum Opinion, finding that Zokaites violated the automatic stay and enjoining him. The issue of damages for these violations was not addressed at that time.

The Lansaws thereafter alleged in the main bankruptcy case that they were entitled to damages for the violations. They advanced these allegations in the form of a "counterclaim" against Zokaites' proof of claim. This counterclaim was not resolved during the remaining five years Judge Fitzgerald was assigned to this matter. The case was reassigned to the Honorable Thomas Agresti on December 11, 2012, upon Judge Fitzgerald's retirement.

Judge Agresti held a status conference on January 29, 2013 and determined that two issues needed to be resolved: a false light invasion of privacy claim and damages for the stay violations, both of which had been brought by the Lansaws against Zokaites. Judge Agresti concluded that the best way to resolve these matters was to initiate a new adversary proceeding. A trial in that proceeding was held on February 1, 2013. Judge Agresti found for Zokaites on the Lansaws' false light invasion of privacy claim. Conversely, he entered a judgment of damages in favor of the Lansaws for the violations of the automatic stay, and denied Zokaites' demands for a reduction based on setoff or recoupment. Zokaites appeals this award.

**Issue One:** *Res Judicata*

Zokaites alleges *res judicata* applies due to the two-day trial held by Judge Fitzgerald in 2006. Judge Fitzgerald's Memorandum Opinion enjoining Zokaites did not address damages. Zokaites alleges this omission is tantamount to "refusing" to award monetary damages and

therefore *res judicata* bars any damages award. Appellant's Brief (Doc. No. 17) at 11. This argument is unfounded.

The affirmative defense of *res judicata* is applicable when "there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). Zokaites has the burden of showing that the doctrine bars the current judgment. Id.

Zokaites has failed to sustain his burden. A final judgment regarding damages was not entered at the conclusion of the 2006 trial. Judge Fitzgerald did not mention either the entry of or denying the ability to obtain a judgment concerning damages in her Memorandum Opinion. She did not direct the entry of a final order concerning damages that would be consistent with Federal Rule of Civil Procedure 54(b). *See* Fed. R. Bankr. P. 7054 (incorporating Fed. R. Civ. P. 54 in adversary proceedings). A final judgment order pursuant to Federal Rule of Civil Procedure 58 was not entered in the adversary proceeding. *See* Fed. R. Bankr. P. 7058 (incorporating Fed. R. Civ. P. 58 in adversary proceedings). A final order pursuant to 11 U.S.C. § 350(a) indicating the main bankruptcy case was fully administered was never entered. *See In re Ginsberg*, 164 B.R. 870, 873 (Bankr. S.D. N.Y. 2002) (entry of order discharging Chapter 7 debtor and trustee's filing of a final report did not close the case where an order pursuant to § 350(a) declaring the case had been "fully administered" was never entered); *In re Swiss Chalet, Inc.*, 485 B.R. 47, 51 (Bankr. D. P. R. 2012) (Bankruptcy estate cannot be "fully administered" and closed when an outstanding contested matter or adversary proceeding remains for adjudication.). Thus, Zokaites has failed to proffer any order or entry in the record that would

indicate Judge Fitzgerald had fully adjudicated the matter of Zokaites' violations of the automatic stay.[1]

Moreover, Judge Agresti clarified in both his Memorandum Opinion and during the 2014 proceeding that damages had not been decided by Judge Fitzgerald and plainly were at issue in the 2014 hearing. As a matter of factfinding, Judge Agresti determined that Judge Fitzgerald's remarks during the 2006 hearing served merely as notice that a damages phase of the proceeding was yet to come. Doc. No. 12 in 2:15cv40 at A 305.[2] He also drew on Judge Fitzgerald's extensive trial notes (which had been filed into the record) in making this finding, as both the Lansaws and Zokaites "refused" to provide a transcript of the 2006 trial. See Memorandum Opinion of Judge Fitzgerald of December 12, 2006, at 1 (Doc. No. 10 in 2:15cv40 at A 169).

Notably, Zokaites did not raise the issue of damages at the conclusion of the 2006 trial.[3] If Zokaites had reason to believe the issue of damages was resolved, he presumably would have sought an appropriate order of clarification in front of Judge Fitzgerald and a concomitant order entering a final judgment on the matter. Instead, the open issue languished for years.

Finally, Zokaites asserts Judge Agresti relied solely upon an argument advanced on June 18, 2009 before Judge Fitzgerald to decide whether *res judicata* applied. This is inaccurate. While Judge Agresti did rely on this statement in part, a reading of the 2014 hearing transcript

---

[1] Zokaites also raises a similar collateral estoppel argument. One of the necessary elements of collateral estoppel is a final judgement on the merits. *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999). Without an order or entry adjudicating the issue of damages, there can be no meaningful collateral estoppel argument.

[2] Judge Agresti explained that it was clear Judge Fitzgerald was "leaving the matter for damages for another day. Otherwise we wouldn't be here eight years later dealing with the case on damages . . . . [T]his would not have been pending." Doc. No. 12 in 2:15cv40 at A308

[3] Judge Fitzgerald did not address damages in her 2006 Memorandum Opinion. Judge Agresti, who used Judge Fitzgerald's trial notes in his factfinding, determined that although Judge Fitzgerald's notes contained information which was relevant to damages, she had not in fact disposed of the matter.

clearly shows he also relied on Judge Fitzgerald's 2006 Memorandum Order and her trial notes. From these sources of information and the fact that the case had remained open for years after the active proceedings before Judge Fitzgerald, Judge Agresti determined as a matter of fact that a final resolution of damages had not occurred. Doc. No. 12 in 2:15cv40 at A 308 ("although the whole opinion or memorandum order is relevant to what we're doing today, it's clear that based on the audio record, Judge Fitzgerald's words in the --- her order of December 2006, that although the testimony may be relevant for both matters, she was addressing only the issue of the injunction and rejection of the lease and not damages and leaving the matter for damages for another day."). This determination certainly was not clearly erroneous.

Moreover, the determination was not an error of law. Zokaites argues that Judge Fitzgerald's injunctive relief followed by the subsequent ability to reject the lease was a resolution of all appropriate damages. But Judge Fitzgerald subsequently made reference to the fact that the issue of damages had not been resolved, see *id.*, and it has long been settled that a court has the ability to enter an award of damages after equitable relief has been granted. *See American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) ("Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law.") (quoting *Davis v. Wakelee*, 156 U.S. 680, 688 (1895); *Medtronics, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 442 (7th Cir. 1984) (Posner, J.) ("A law court could not give equitable relief, incidental or otherwise, while a plaintiff in equity could ask the equity court to grant him legal as well as equitable relief - for example, damages as well as an injunction - under the equity clean-up doctrine.") (citing 1 Pomeroy, A TREATISE ON EQUITY JURISPRUDENCE § 236-41 (1881); *Wright v. Scotton*, 13 Del. Ch. 402, 417–18, 121 Atl. 69, 76 (S. Ct. 1923); Dawson & Palmer, CASES ON RESTITUTION 146–51 (2d ed. 1969)). In addition, the case remained open in 2012, which

signified that additional judicial action was needed to close the case. For all these reasons, it is clear that r*es judicata* does not bar the adversary proceeding on damages and Judge Agresti's holding must be affirmed.

**Issue Two: Damages for Emotional Distress**

Judge Agresti awarded compensatory emotional distress damages to the Lansaws in the amount of $7,500. This award will be affirmed.

Zokaites argues that it was error to award emotional distress damages without expert testimony or what Zokaites asserts to be the lack of credible evidence of injury. However, as Judge Agresti aptly noted, "when the willful violator of the automatic stay has engaged in conduct that is patently or obviously egregious, emotional distress injuries may be proven merely by credible debtor testimony alone without resort to other extrinsic and corroborating evidence." *In re Wingard*, 382 B.R. 892, 904 (Bankr. W.D. Pa. 2008).

Judge Agresti found Zokaites' actions to be "obviously egregious" and therefore no expert testimony was necessary. Indeed, Judge Agresti noted "[t]he post filing conduct of [Zokaites] ranks with the most egregious the Court has ever personally witnessed while on the Bench or even reviewed in its research when evaluating violations of the automatic stay." Memorandum Opinion of January 14, 2015 (Doc. No. 1-2 in 2:15cv404) at 41.[4] Of course, under these circumstances Judge Agresti was permitted to rely solely on the Lansaw's testimony, which he explicitly found to be credible. *Id.* at 16 ("The Court was in general favorably impressed with the testimony and credibility of the Lansaws and is of the view that they did experience emotional distress as a direct result of Zokaites' conduct. That conclusion is bolstered by the

---

[4] Judge Agresti was appointed to the bench on April 5, 2004.

findings made by Judge Fitzgerald in her December 12, 2006 Opinion.").[5]  This finding of fact is not clearly erroneous because the record contains a sufficient quantum of evidence to support it.

There also was no error concerning Judge Agresti's determination of the cause of the Lansaw's emotional distress.  Judge Agresti found that while there were other contributing factors regarding the Lansaws' emotional distress, Zokaites' post-petition conduct clearly was a cause in fact of that distress.  *Id.* at 23-24.  Deference must be given to this finding.

Finally, Zokaites argues that the speculative nature of the emotional damages award was plain error because Judge Agresti tempered the award.  However, "[d]amages for emotional distress are by their very nature incapable of precision."  *Griffiths v. CIGNA Corp.*, 857 F. Supp. 399, 409 (E.D. Pa. 1994), *aff'd*, 60 F.3d 814 (3d Cir. 1995).  Indeed, "there is no legal yardstick by which to measure accurately reasonable compensation for injuries such as emotional distress." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1203 (3d Cir. 1986) (internal citations omitted).  Judge Agresti carefully determined the amount of the emotional distress award based on the Lansaws' testimony, consideration of other factors that potentially contributed to their distress and awards in similar cases.  Arriving at an award for emotional damages inherently involves some degree of estimation.  In this regard Judge Agresti's award was not clearly erroneous, an abuse of discretion or an error of law and it must be affirmed.

---

[5] Zokaites belabors the fact that Judge Agresti did not employ a three point "*Dawson*" test mentioned in the *Wingard* opinion.  However, the *Dawson* test refers to conduct that is *not* patently or obviously egregious.  *In re Wingard*, 382 B.R. at 905.  Judge Agresti found Zokaites' conduct was patently egregious and therefore determined that he was not required to use the *Dawson* test.

**Issue Three: Punitive Damages**

Zoikates contends that the basis for the punitive damage award was improper and the amount runs afoul of due process. The award was not erroneous as a matter of fact and is within the confines of due process. Consequently, it will be affirmed.

The primary purpose of imposing punitive damages is to deter future conduct. *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991). This deterrent effect is not limited to the creditor at hand. It also serves to deter other creditors from acting in a similar manner. *Id.* at 19 (Punitive damages "[protect] the public *by deterring the defendant and others* from doing such wrong in the future.") (emphasis added).

The United States Court of Appeals for the Third Circuit has laid out three guideposts to be considered in awarding punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 189 (3d Cir. 2007) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1995)). All of these areas of inquiry support the punitive damages award.

Here, while the actions at hand took place nine years ago, the purpose of deterring both Zokaites and other creditors from engaging in similar conduct in the future is just as compelling today as it was immediately after the incidents in question. If punitive damages could only be awarded immediately after the reprehensible conduct occurs, then those who choose to thwart the operation of the automatic stay would be able to avoid any consequences for their conduct simply by the lapse of time. Under Zokaites' logic, a creditor would merely need to delay the

proceedings to avoid responsibility. Obviously, the force and effect of the automatic stay would be significantly eroded under such an approach and the relief provided by the Bankruptcy Code would be diminished and appear to be illusory. Such mischief cannot be countenanced. In other words, the punitive damages award by Judge Agresti serves to provide an appropriate deterrent effect, regardless of the lapse of time noted by Zokaites.

The Supreme Court has held "[t]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citing *Gore*, 517 U.S., at 575).[6] The reprehensibility of Zokaites' conduct speaks volumes.

Judge Agresti found Zokaites' conduct regarding the automatic stay to be among the "most egregious" he had ever encountered. Specifically, Judge Agresti, relying on Judge Fitzgerald's findings, found Zokaites physically intimidated Mrs. Lansaw at her daycare when there were infants and small children present, Memorandum Opinion at 26, chained the door to the daycare center, *id.* at 27, took the Lansaws' keys to their place of business, as well as their home and mailbox, *id.* at 29, and attempted to thwart their attempts to find a new location for their business, *id.*, all in violation of the automatic stay. He also found that there were multiple

---

[6] In regards to this assessment, factors to consider include "[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 (3d Cir. 2007) (citing *Campbell*, 538 U.S. at 419). Many of these factors are met here. The violations produced harm in the form of significant emotional distress and anxiety, the conduct was done intentionally and seemingly without regard to the health or safety of the children who were present and the Lansaws, the Lansaws had substantial vulnerability at the time which Zokaites sought to use to his advantage, Zokaites engaged in multiple violations, and his violations can hardly be characterized as being the result of mere accident. *See, e.g.,* Memorandum Opinion (Doc. No. 1-2) at 33 ("It appears to the Court that Zokaites may actually have derived a perverse enjoyment from tormenting the Lansaws.").

stay violations and noted it was distressing that the Lansaws had to secure an injunction in order for the violations to cease. He observed that these actions were "very troubling" and credited the Lansaws' descriptions of these events. *Id.* at 30. He found Zokaites' testimony attempting to mitigate these instances "not credible." *Id.* The nature of Zokaites' actions easily support this "most important" indicator of the reasonableness of a punitive damages award.

As Zokaites points out, the Supreme Court has held that "punitive damages [of] more than four times the amount of compensatory damages *might* be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 420 (emphasis added). However, this is not a hard and fast rule. Here, the punitive damages are approximately five times the compensatory damages. But given the egregiousness of Zokaites repeated and ongoing violations, this amount cannot be said to violate due process.

The ability to pay is another factor to be considered. *In re Tezla*, 2009 212542, *3 (E.D. Pa. Jan. 28, 2009) (a bankruptcy court exercising its discretion in considering a punitive damages award should consider among other factors "(1) the nature of the respondent's conduct; (2) the respondent's ability to pay; (3) the respondent's motives; and (4) any provocation by the debtor.") (citing *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 487 (E.D. Pa. 1989); *In re Patterson*, 263 B.R. 82, 97 (Bankr. E.D. Pa. 2001)). Judge Agresti relied on testimony from the 2006 trial in determining that Zokaites had the financial wherewithal to pay the punitive damages. He pointed out that there was sufficient circumstantial evidence regarding Zokaites' property holdings to support a finding that he could pay a $40,000 award. The circumstantial information relied on by Judge Agresti supplied the needed evidentiary support, and his findings concerning the ability to pay are not clearly erroneous.

Finally, Zokaites argues that the court's reliance on the testimony of Mr. Calairo, Zokaites' former attorney, was improper. But Judge Agresti clearly used a multitude of factors and a variety of evidence in arriving at the punitive damages award. Thus, even if the reliance on Attorney Calairo's testimony somehow was misplaced, there is more than a sufficient amount of other evidence to support the damages award. The punitive damages award was not clearly erroneous and will be affirmed.

**Issue Four: The Offer of Judgment**

Judge Agresti's ruling regarding Zokaites' offer of judgment also will be affirmed. Zokaites' reliance on Rule 68 is misplaced.

Zokaites seeks to avail himself of "prevailing party" status based on Judge Agresti's disposition of the Lasaws' false light claim. Based on this "victory," he contends he is entitled to the attorneys fees and costs he incurred after the offer was made. But the Supreme Court has held that Rule 68's cost shifting provision "applies only to offers made by the defendant *and only to judgments obtained by the plaintiff.* It therefore is simply inapplicable [when] *the defendant [obtains] the judgment.*" *Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 352 (1981) (emphasis added). In other words, Rule 68 does not apply in cases like the one at hand "where judgment is entered against the plaintiff offeree and in favor of defendant offeror." *Id.* at 346. To do otherwise would violate the spirit of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), where the Supreme Court held "a district court may in its discretion award attorney's fees to a prevailing defendant . . . [only] upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 422. At the very least, the Lansaws false light claim was not without foundation. Accordingly, Zokaites' offer of judgment does not entitle him to costs under Rule 68.

11

**Issue Five: Property of the Estate**

Zokaites alleges that the Lansaws' award constitutes property of the estate and any recovery must be offset by the debt they owe him. He asserts that Judge Agresti "failed to address this issue at all." Zokaites is mistaken. The Memorandum Opinion has a full section entitled "Setoff/Recoupment" in which Judge Agresti determined that offsetting the Lansaws' award against Zokaties' claim was improper for the reasons set forth in 11 U.S.C. § 553(a).

11 U.S.C. § 553(a) provides:

[t]here are four prerequisites to the effectuation of a setoff:

> (1) a debt exists from the creditor to the debtor and arose prior to the commencement of the bankruptcy case;
> (2) the creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case;
> (3) the debt and the claim are mutual obligations; and
> (4) each are valid and enforceable.

*Id.; accord In re Tarbuck*, 304 B.R. 718, 721 (Bankr. W.D. Pa. 2004). Judge Agresti properly held that Zokaties is not entitled to a setoff because he does not meet this first requirement. Zokaties' (the creditor) debt to the Lansaws (the debtors) did not arise prior to the commencement of the bankruptcy case. It arose because of the actions he took after and as a result of the Lansaws filing for bankruptcy. Even if Zokaites' argument that the Lansaws' damages were part of their bankruptcy estate was appropriate, Zokaties does not meet any of the other requirements for setoff. Judge Agresti properly held Zokaites was not entitled to a setoff or recoupment on the Lansaws' award.

For the reasons set forth above, the Bankruptcy Court's order awarding damages for

Zokaites' violations of the automatic stay will be affirmed. An appropriate order will follow.

Date: March 15, 2016

                s/David Stewart Cercone
                David Stewart Cercone
                U.S. District Court Judge

cc:  Garth Lansaw
   Deborah Lansaw
   2353 Fairhill Road
   Sewickley, PA 15143

   (*Via First Class Mail*)

   Jeffrey A. Hulton, Esquire

   (*Via CM/ECF Electronic Mail)*